UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YESCENIA CORRALES,

Petitioner(s),

v.

ICE FIELD OFFICE DIRECTOR, et al.,[1]

Respondent(s).

CASE NO. C26-1223-KKE

ORDER ON HABEAS PETITION

Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus, asserting that her re-detention by Immigrations and Customs Enforcement ("ICE") without a hearing violated the Immigration and Nationality Act ("INA") and her right to due process.  *See* Dkt. No. 4.  Petitioner seeks release or "access to a low bond," which the Court construes as a request for a bond hearing.  Dkt. No. 4 at 6.  The briefing on Petitioner's habeas petition is now complete.  Dkt. Nos. 4, 7, 11, 13, 14.  For the reasons below, the Court will grant in part the habeas petition.

## I.    BACKGROUND

Petitioner Yescenia Corrales is a native and citizen of Honduras or Nicaragua, and entered the United States on an unknown date at an unknown location without being inspected, admitted, or paroled.  Dkt. No. 8 ¶ 3.  Petitioner's criminal history includes a conviction in 2010 for "Hit and

---

[1] In their supplemental brief, the Government argues for the first time that the Petition should be dismissed for lack of jurisdiction because Petitioner failed to name the proper respondent, Bruce Scott, the warden of the NWIPC.  Dkt. No. 13 at 1.  That argument ignores that Bruce Scott was added as a respondent on April 13, 2026.  Dkt. No. 3 at 2.

ORDER ON HABEAS PETITION - 1

Run—Leaving the Scene of a Crash with Death," in Orange County, Florida, for which Petitioner received a sentence of two years of incarceration. Dkt. No. 8 ¶ 5. On August 25, 2010, while Petitioner was incarcerated in Florida, Petitioner was served with a Notice to Appear ("NTA") and placed in removal proceedings. *Id.* ¶ 6. Petitioner was to be transferred to immigration custody upon completion of her Florida state sentence. *Id.* On August 27, 2010, an Immigration Judge ("IJ") ordered Petitioner removed to Nicaragua after Petitioner filed a stipulated request for an order of removal and waiver of hearing. *Id.* ¶ 7. On November 3, 2010, Petitioner was removed to Nicaragua pursuant to the IJ's order. *Id.* ¶ 9.

On December 16, 2024, Petitioner was detained after an Air and Marine helicopter pilot observed a group of four individuals, including Petitioner, walking along a dirt road next to the Rio Grande River, and notified U.S. Customs and Border Patrol ("CBP"). *Id.* ¶ 10. Petitioner was "processed for Reinstatement of a Prior Order of Removal," and later convicted of illegal re-entry of removed noncitizens into the United States under 8 U.S.C. § 1326. *Id.* She was sentenced to 18 months of incarceration at the SeaTac Federal Detention Center. *Id.* ¶ 11.

On January 28, 2026, the Department of Homeland Security ("DHS") sent an immigration detainer to the Federal Detention Center, requesting that they notify DHS "as early as practicable … before [Petitioner] is released from [] custody." Dkt. No. 13-1 at 2. That notice indicated that there was probable cause that Petitioner was a "removable individual" and identified various factors supporting such cause. *See id.* On March 27, 2026, Petitioner was released from federal detention into ICE custody at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* ¶ 13. The same day, Petitioner was issued, but apparently refused to sign, a "Notice of Rights and Request for Disposition." Dkt. No. 13-4 at 2. That form indicates that Petitioner has "the right to a hearing before the Immigration Court, and that if she "request[s] a hearing before a judge in Immigration Court, [she] may be detained, or [she] may be eligible to be

ORDER ON HABEAS PETITION - 2

released from detention, either with or without payment of bond." *Id.* Petitioner was also issued a "Notice of Custody Determination" on DHS Form I-286, which states: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations," the signing officer "determined that, pending a final administrative determination in [Petitioner's] case, [Petitioner] will be [d]etained by the Department of Homeland Security." Dkt. No. 13-3 at 2. On April 2, 2026, Petitioner was served with a Notice to Appear ("NTA") charging her with having entered the United States without inspection.[2] *Id.* ¶ 14; Dkt. No. 13-6 at 2. The NTA provides that Petitioner is a "[noncitizen] present in the United States who has not been admitted or paroled," and ordered Petitioner to appear before an immigration judge on April 8, 2026.

## II.    ANALYSIS

### A.    Legal Standard

"Writs of habeas corpus may be granted by … the district courts …within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on her petition, Petitioner must show by a preponderance of the evidence that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Because Petitioner proceeds *pro se*, the Court construes her filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[2] Petitioner was served with an NTA on the day she was detained, which was canceled. Dkt. No. 13-5 at 2–5. The original NTA charged Petitioner with being "present in the United States without being admitted or paroled, or [having] arrived in the United States at any time or place other than as designated by the Attorney General," and with having "been ordered removed under section 235(b)(1), section 240, or any other provision of law, and who enters or attempts to reenter the United States without being admitted." *Id.* at 5. Petitioner's current NTA omits the second charge. *See* Dkt. No. 13-6 at 5.

ORDER ON HABEAS PETITION - 3

**B.      Petitioner is Detained Pursuant to 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225(b).**

The Court considers a threshold question of whether Petitioner is detained as an "applicant for admission" under 8 U.S.C. § 1225(b), as the Government contends, or under § 1226(a), as Petitioner asserts.  Dkt. No. 7 at 5–7, Dkt. No. 4 at 3–4.  For the reasons below, the Court agrees with Petitioner and finds that § 1226(a) governs her detention.

Two sections of the INA govern the detention of noncitizens pending removal proceedings: 8 U.S.C. § 1225 and § 1226.  Under 8 U.S.C. § 1225, a noncitizen "who has not been admitted or who arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1).  Applicants for admission fall into two sub-categories, though detention is mandatory for both.[3]  Noncitizens who are subject to mandatory detention may only be released on "parole into the United States temporarily … only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288.

8 U.S.C. § 1226, on the other hand, establishes a discretionary detention framework and is the "default rule" for detaining and removing noncitizens who are "already present in the United States."  *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).  Under § 1226(a), for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."  8 U.S.C. §§ 1226(a)(1)–(2).

Even where, as here, the Government detains a noncitizen upon arrival, "if he has been treated by [the government] as subject to discretionary detention under section 1226, rather than

---

[3] Section 1225(b)(1) applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," 8 U.S.C. § 1225(b)(1), while section 1225(b)(2) serves as a "catchall provision" that applies to all other applicants not covered by section (b)(1), 8 U.S.C. § 1225(b)(2).  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

ORDER ON HABEAS PETITION - 4

mandatory detention under section 1225, the former is more likely to apply." *Bello Chacon v. Hermosillo*, 2:25-CV-02299-TMC, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)).

Here, the record before the Court suggests that the Government has treated Petitioner as subject to discretionary detention under § 1226(a) rather than mandatory detention under § 1225(b). First, on both Petitioner's original and current NTA, the reviewing deportation officer declined to identify her as an "arriving [noncitizen]"—which would suggest that she is subject to mandatory detention—instead determining her to be a "[noncitizen] present in the United States who has not been admitted or paroled." Dkt. No. 13-5 at 2; Dkt. No. 13-6 at 2; *see Barrios Osorio v. Bondi*, No. 2:26-CV-00317-JNW, 2026 WL 607765, at *2 (W.D. Wash. Mar. 4, 2026) (finding that identical language used in an NTA supported that noncitizen was not "seeking admission," and thus, not subject to mandatory detention under § 1225(b)); *Cotoc Yac De Yac v. Hermosillo*, 2:25-cv-02593-DGE-TLF, 2026 WL 124334, at *3 (W.D. Wash. Jan. 16, 2026) (finding the same).

Second, Petitioner's Notice of Custody Determination plainly states that her custody determination was made "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act"—i.e., § 1226. Dkt. No. 13-3 at 2; *see P.G. v. Noem*, 1:25-CV-01794-JLT-SKO (HC), 2026 WL 183732, at *1 (E.D. Cal. Jan. 23, 2026) (finding issuance of Form I-286 Notice of Custody Determination supported that § 1226(a) governed immigrant's detention and subsequent release). Though the ICE officer completing the Notice of Custody Determination determined that Petitioner should be detained, the form also contemplates release on bond or on one's own recognizance, further undermining the Government's position that § 1225(b)'s mandatory detention scheme applies. *See* Dkt. No. 13-3 at 2.

Third, Petitioner was issued a "Notice of Rights and Request for Disposition" form which advised Petitioner that she may "request a hearing before a judge in Immigration Court," "be

ORDER ON HABEAS PETITION - 5

detained," or "be eligible to be released from detention, either with or without payment of bond." Dkt. No. 13-4 at 2. Though the Notice of Rights form lacks reference to a specific section of the INA, its reference to hearings and release on bond additionally undercuts the Government's insistence Petitioner is mandatorily detained under § 1225(b).

Thus, the Court concludes Petitioner is not subject to mandatory detention pursuant to § 1225(b), and instead is subject to discretionary detention under § 1226(a).

**C.      Petitioner is Entitled to a Bond Hearing.**

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). It is unclear the extent to which the Government actually opposes this relief, as their arguments in the return and supplemental brief are internally inconsistent. Respondents argue first that this Court should not intervene because "Petitioner did not utilize the administrative remedies available to her because she has not requested a bond redetermination hearing." Dkt. No. 7 at 11. While the Government's documentary evidence shows that Petitioner requested that an immigration judge review her custody determination on the same day that it was made, the Government concedes that no such hearing has ever taken place. *See* Dkt. No. 13-3 at 2; Dkt. No. 14 ¶ 4. At the same time, Respondents argue that Petitioner is subject to mandatory detention (and therefore not entitled to a bond hearing) because she is detained under § 1225(b).

In light of the above, it is unclear to the Court what additional administrative remedies the Court should require Petitioner to exhaust when she has sought review of her custody determination but has never received a bond hearing.[4] Dkt. No. 14 ¶ 4, Dkt. No. 13 at 3. And

---

[4] The record does not indicate that an immigration judge has actually reviewed the detention officer's custody determination pursuant to Petitioner's request.

ORDER ON HABEAS PETITION - 6

even if Petitioner expressly requested a bond hearing, as other courts have observed, those efforts likely would have been futile given the Government's insistence that § 1225(b) governs her detention. *See, e.g.*, *Mejia Lopez v. Noem*, No. 2:26-CV-00228-TMC, 2026 WL 323057, at *3 (W.D. Wash. Feb. 6, 2026) (declining to require exhaustion "in light of Respondents' and the BIA's consistent position that detainees in [petitioner's] position are subject to mandatory detention under § 1225(b)(2).").

In sum, the Court declines to require prudential exhaustion and finds that Petitioner is "in custody in violation of the" INA because she has not received a bond hearing. The Court turns to the appropriate remedy.

### III.   REMEDY

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and "the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief is not limited "to the discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted," and "provides that '[t]he court shall … dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

Here, Petitioner has been deprived of the opportunity to be heard at a bond hearing for several months. Though Petitioner seeks release, the Court concludes that request is premature at this time: § 1226(a) requires a bond hearing, but nonetheless affords DHS discretion to detain noncitizens. *See* 8 U.S.C. § 1226(a) ("the Attorney General … may continue to detain the arrested [noncitizen]" pending a decision on removal). The Court instead finds the appropriate relief in this case is to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). Consistent with other decisions in this district and others, at that hearing, the Government will bear the burden of proof of showing by clear and convincing evidence that Petitioner is a danger to the community

ORDER ON HABEAS PETITION - 7

or a flight risk. *See, e.g.*, *Geler v. Blanche*, 2:26-CV-00481-LK, 2026 WL 1251660, at *7–8 (W.D. Wash. May 7, 2026); *Solano Gallardo v. Warden, Adelanto Det. Facility*, 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 n.1 (C.D. Cal. Feb. 20, 2026); *Balwan v. Bondi*, 2:26-CV-00248-LK, 2026 WL 497098, at *8–10 (W.D. Wash. Feb. 23, 2026) (holding that "shifting the burden of proof to the government" is an appropriate "procedural safeguard" where petitioner "effectively had no opportunity to demonstrate why he should be released on bond.").

## IV.   CONCLUSION

For the reasons explained above, the Court GRANTS in part the petition for writ of habeas corpus (Dkt. No. 4) and ORDERS as follows:

1) The Government must provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ONE WEEK of this order. At the hearing, the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk.

2) The Government is enjoined from denying bond to Petitioner on the basis that she is detained pursuant to 8 U.S.C. § 1225(b).

3) If a bond hearing is not provided within ONE WEEK of this Order, Petitioner shall be released from ICE custody consistent with 8 U.S.C. § 1226(a).

4) The Government shall file a declaration no later than TEN DAYS from the date of this order, confirming that Petitioner received a bond hearing and briefly explaining the results of that hearing (or otherwise confirming her release).

5) Nothing in this order prevents the Immigration Judge from granting a continuance if one is requested by the Petitioner.

//

//

ORDER ON HABEAS PETITION - 8

Dated this 12th day of June, 2026.

Kymberly K. Evanson
United States District Judge